UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


THE ESTATE OF MARTIN
LUTHER KING JR., INC., A
GEORGIA CORPORATION                                    PLAINTIFF


VS.                              CIVIL ACTON NO. 3:11CV591TSL-MTP


HOWARD NELSON BALLOU                                    DEFENDANT


MEMORANDUM OPINION AND ORDER

This action arises out of claims made by plaintiff, the
Estate of Martin Luther King, Jr. Inc., a Georgia corporation
(King Estate), that certain documents in the possession of
defendant Howard Nelson Ballou relating to the civil rights leader
Dr. Martin Luther King, Jr. are the property of the King Estate.
The King Estate seeks the return of the documents and damages for
conversion.  Defendant Howard Ballou has moved for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure, contending the King Estate's claims are barred by the
statute of limitations, and alternatively, that the Estate's
claims fail as a matter of law on the merits because the Estate
cannot establish ownership and consequent right to possession of
the documents at issue.  The court, having considered the
memoranda of authorities, together with attachments, submitted by
the parties, concludes that defendant's motion is well taken and
should be granted.

Defendant Howard Ballou's mother, Maude Ballou, originally came to possess the subject documents[1] during her employment as the late Dr. Martin Luther King, Jr.'s personal secretary.  The record establishes that in 1955, upon his election as president of the Montgomery Improvement Association (MIA) in Montgomery, Alabama, Dr. King, who was close personal friends with Leonard and Maude Ballou, defendant's parents, hired Mrs. Ballou as his secretary.  She worked for him in Montgomery, during his tenure as MIA president and as he was working to found the Southern Christian Leadership Conference (SCLC).  In 1960, when Dr. King and his family moved to Atlanta to establish his office at the SCLC headquarters, Mrs. Ballou accompanied Dr. King to Atlanta, and assisted him in his position as SCLC president.  After a brief period in Atlanta, Mrs. Ballou left Dr. King's employ and returned to her family in Alabama.

---

[1]     Plaintiff's complaint alleges that the documents possessed by defendant include
      speeches, addresses and sermons written by Dr. King;
      numerous photographs of Dr. King with others at
      significant historical events; newsletters and
      correspondence regarding numerous civil rights
      organizations in which Dr. King was involved, including
      the [Montgomery Improvement Association] and the
      [Southern Christian Leadership Conference]; and numerous
      letters written to and from Dr. King.
The complaint recited that an inventory of the documents in the collection was attached to the complaint, but no inventory accompanied the complaint.  The complaint goes on to identify nine specific historically significant documents which are alleged to be the property of the King Estate.

It is undisputed that over the course of her employment with Dr. King, Mrs. Ballou obtained various documents relating to Dr. King and his work, and that of the MIA and SCLS, and that when she left Dr. King's employ, she kept these documents.  Leonard Ballou organized these various documents, and when he and Mrs. Ballou later became employed at Elizabeth City State University (ECSU) in Elizabeth City, North Carolina, she, as a registrar and he, as an archivist, Leonard Ballou apparently stored the documents and other items in the basement of the ECSU library.  In December 2007, after Leonard Ballou's death, an ECSU archivist discovered the documents in the library basement.  Upon the discovery of the items, and believing the documents had belonged to Leonard Ballou, ECSU delivered the documents to Leonard Ballou's son, defendant Howard Ballou.

The King Estate learned of the existence of the subject documents, and of their possession by defendant, in or around February 2010, when an article was published in an Elizabeth City newspaper relating the discovery of the documents.  The King Estate contacted defendant asserting ownership of the documents and demanding their return.  When defendant failed to respond and/or return the papers, the King Estate filed this suit in replevin seeking possession of the documents in defendant's possession and damages for conversion.

3

In his motion for summary judgment, defendant argues two grounds for dismissal:  (1) that plaintiff's claims are barred by Mississippi's three-year statute of limitations, and (2) that the Estate cannot prevail because it cannot establish ownership of the subject documents, an essential element of its claims.  In the court's opinion, defendant's motion is well taken on both points.

While defendant's reasoning with respect to his statute of limitations argument is faulty, his conclusion that the claims are time-barred is correct.[2]  In Mississippi, claims for conversion and replevin are governed by Mississippi's residual statute of limitations, which for causes of action accruing after 1989 is three years and for causes of action accruing in or prior to 1989 is six years.  See Miss. Code Ann. § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."); First Bank v. Eastern Livestock Co., 886 F. Supp. 1328, 1330 (S.D. Miss. 1995).  Mississippi law provides that "[a] conversion occurs when a person exercises an unauthorized act of dominion or ownership over the personal

---

[2]     While the court ultimately concludes, *infra* at pp. 9-15, that plaintiff has failed to create a genuine issue of material fact as to its alleged ownership of the subject documents, the court will assume *solely for purposes of its discussion of the statute of limitations issue*, that Dr. King did not give the subject documents to Mrs. Ballou as a gift for her to keep, as she claims, and that instead, her right to possess the documents existed only because of and during her employment with Dr. King.

4

property of another." <u>Cycles, Ltd. v. W.J. Digby, Inc.</u>, 889 F.2d 612, 619 (5th Cir. 1989) (citing <u>Masonite Corp. v. Williamson</u>, 404 So. 2d 565, 567 (Miss. 1981)); <u>General Motors Acceptance Corp. v. Bates</u>, 954 F.2d 1081, 1086 (5th Cir. 1992) (quoting <u>Cycles</u>); <u>Walker v. Brown</u>, 501 So. 2d 358, 361 (Miss. 1987) ("conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's rights").  It is the unauthorized act of dominion or ownership over another's property that marks the accrual of the limitations period.  Likewise, as replevin is an action for recovery of personal property wrongfully taken or withheld, the statute begins to run when the property is wrongfully taken or withheld.  <u>See</u> <u>Griffin v. Jones</u>, 161 Miss. 776 (Miss. 1931); <u>Johnson v. White</u>, 21 Miss. 854 (Miss. Err. & App. 1850).

     While not entirely clear, defendant appears to take the position that the King Estate's claims accrued, and the statute of limitations began to run at the time the King Estate reasonably should have discovered the existence of the documents at issue. In this vein, he points out that the documents were created more than fifty years ago and that the King Estate was incorporated over eighteen years ago; he then declares that "the King Estate has had over eighteen (18) years to discover the existence of these documents."  He argues, alternatively, that the statute of limitations expired in December 2010, three years after the

documents were first discovered in the library basement at ECSU in December 2007 by a University employee.

Defendant has cited no authority, nor presented any argument for that matter, to suggest how these dates might have a bearing on when the limitations period commenced. In the court's opinion, the date the King Estate was *incorporated* is plainly irrelevant, particularly when one considers that the King Estate was actually *established* fifteen years earlier, in 1968. But the date the Estate was established is equally irrelevant to the determinative question of when the conversion occurred. Likewise, the date an ECSU employee discovered the documents at the University is of no import in the limitations analysis. As plaintiff observes, the statute of limitations for conversion and replevin is not a "discovery" statute. See West v. Nationwide Trustee Servs., Inc., No. 1:09cv295-LG-RHW, 2009 WL 103159, 2-3 (S.D. Miss. Dec. 16, 2009) ("'[I]t is immaterial whether the owner knew of the conversion or not, if no fraud is practiced to prevent his knowledge.'")(quoting Wilder v. St. Joseph Hosp., 225 Miss. 42, 82 So. 2d 651, 652 (Miss. 1955)).

For its part, plaintiff argues in response to defendant's motion that the conversion did not occur until defendant refused to return the property on demand, and that therefore, in this case, the statute of limitations on plaintiff's claims did not begin to run until, at the earliest, June 29, 2010, when the

6

Estate first contacted defendant Ballou making its ownership interest known and demanding return of the documents.  <u>See</u> <u>Greenline Equip. Co. v. Covington Cty. Bank</u>, 873 So. 2d 950, 955 (Miss. 2002)(stating "[t]here is no conversion until the title of the lawful owner is made known and resisted.").  In making this argument, plaintiff correctly recognizes that the determination of when a cause of action for conversion accrues depends on the circumstances of the alleged conversion.  If the original taking of the goods was tortious, the wrongful taking establishes the conversion and the statute of limitation begins to run on the date the property was wrongfully taken, and no demand is necessary. <u>Witherspoon v. Blewett</u>, 47 Miss. 570 (Miss. 1873).  <u>See also</u> <u>Johnson v. White</u>, 21 Miss. 854 (Miss. Err. & App. 1850) ("[W]hen goods are tortiously taken, the statute of limitations begins to run from the taking, for the tortious act is of itself a conversion."); <u>West v. Nationwide Trustee Servs., Inc.</u>, No. 1:09cv295-LG-RHW, 2009 WL 103159, 2-3 (S.D. Miss. Dec. 16, 2009) (stating that in a conversion action, the statute of limitations begins to run when the goods are tortiously taken) (citing <u>Wilder v. St. Joseph Hosp.</u>, 225 Miss. 42, 82 So. 2d 651, 652 (Miss. 1955)).  However, if the property "came to defendant's possession from plaintiff or a third party, and [is] merely detained, a demand and refusal of delivery is necessary before suit," <u>Witherspoon v. Blewett</u>, 47 Miss. 570, and in that circumstance,

the claim will accrue upon demand and refusal of delivery.
Plaintiff's error herein lies in its classifying this case as
falling in this second category of cases, when it plainly belongs
in the first.

Plaintiff reasons that because Mrs. Ballou obtained
possession of the subject documents as a result of her employment
with Dr. King and she was authorized to have possession of the
documents (not ownership) in keeping with her job duties, then her
original possession of the documents was authorized to that
extent.  It reasons that since she did not originally obtain the
documents from Dr. King unlawfully or tortiously, then no
conversion occurred until Dr. King's estate made its ownership
claim to those documents known and they were not returned.
However, in its complaint, plaintiff complains that while Mrs.
Ballou was entrusted with property belonging to Dr. King during
and as part of her employment with Dr. King, "she had no personal
right or ownership of these documents" and yet "when she left
Atlanta in the summer of 1960 to rejoin her family, she took many
of Dr. King's documents, photographs and other items with her."
As Mrs. Ballou's right to possess the documents existed only in
connection with her employment, then any conversion occurred in
the summer of 1960,[3] since her taking Dr. King's documents,

---

[3]     Although under this analysis, the conversion actually
occurred in Georgia, Mississippi's law governs the statute of
limitations issue.  See Huss v. Gayden, 571 F.3d 442, 450 (5th
Cir. 2009) (explaining that Mississippi courts generally treat

photographs and other items, to which she had no ownership interest or right of possession, was tortious at that time.

Although the issue in <u>Price v. United States</u>, 69 F.3d 46 (5th Cir. 1995), was *where*, rather than *when*, a conversion occurred, the court's holding is consistent with the court's conclusion herein.  In <u>Price</u>, watercolor paintings by Adolf Hitler were stored during World War II in a German castle and were found and collected by United States troops.  <u>Id</u>. at 50.  The paintings were catalogued at a collection point, but rather than being returned to their owner, they were confiscated and shipped to the United States.  Decades later, in the 1980s, an individual who had purchased the rights to the paintings from the original owner, demanded the paintings from the United States government.  The court was required to determine where the conversion occurred, since under the Federal Tort Claims Act, jurisdiction did not extend to torts committed in foreign countries.  The determinative question for the court was this:  "[A]t what stage of its handling of the watercolors did the United States commit an act that was inconsistent with Hoffman's interest?"  <u>Id</u>.

The court held that the alleged conversion of the paintings did not occur in the United States in the 1980s, when the United States government refused the putative owner's demand for the

statutes of limitations as procedural and thus apply domestic limitations periods).

paintings, but rather it occurred when the paintings were confiscated in Germany and shipped to the United States since that was when (and where) the act plainly inconsistent with the owner's interest occurred.  Notably, the court accepted that the first taking by the United States of the watercolors from the castle to the collecting point was not inconsistent with the owner's interest and therefore did not constitute an act of conversion; the conversion occurred upon the subsequent confiscation and shipment to the United States.  Id.

In the case at bar, as in Price, the determinative question is: "[A]t what stage of [her] handling of [Dr. King's documents] did [Mrs. Ballou] commit an act that was inconsistent with [Dr. King's] interest?"  The parties agree that Mrs. Ballou's original possession of the subject documents was authorized because of her employment.  But if plaintiff is correct that she had no ownership interest in or right to possess the documents after she was no longer employed by Dr. King, then her taking the documents upon leaving Dr. King's employment was a tortious act inconsistent with Dr. King's interest.  Thus any claim for conversion and/or replevin accrued at that time, and not some fifty years later, when Dr. King's estate demanded the documents from defendant. It follows that the statute of limitations has run on plaintiff's claims in this cause.

Even if the claims were not time-barred, plaintiff still could not prevail as it has failed to present evidence establishing its right to possession of the documents in defendant's possession.  To succeed on a conversion claim, the plaintiff must show that it owns the property at issue, for as the Mississippi Supreme Court has held, "'[i]t is elementary that ownership is an essential element of conversion.'"  <u>Evans v. Mississippi Dept. of Human Servs.</u>, 36 So. 3d 463, 477 (Miss. Ct. App. 2010) (quoting <u>Cmty. Bank of Ellisville, Miss. v. Courtney</u>, 884 So. 2d 767, 772-73 (Miss. 2004)).  To establish a conversion, the burden is on plaintiff to prove "a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand.'"  <u>Id.</u> (quoting <u>Cmty. Bank of Ellisville</u>, 884 So. 2d at 77-73).  Similarly, to establish a right of replevin, plaintiff must show that at the time of Dr. King's death he owned the documents at issue, so that the documents rightfully are the property of the King Estate.  <u>See</u> Miss. Code § 11-37-101, <i>et seq.</i>; <u>see</u> <u>also</u> <u>Stewart v. First Nat'l Bank & Trust Co. of Vicksburg</u>, 5 So. 2d 683 (Miss. 1942).

In the present case, Maude Ballou has maintained in sworn testimony that over the course of her employment with Dr. King, he personally gave her numerous documents that he intended for her to keep and have as her own personal property and which he did not

11

intend that she return to him.[4]  Defendant submits that plaintiff
has not and cannot prove ownership of, or a right to possess the
documents at issue, an essential element of its claim, in light of
Mrs. Ballou's uncontroverted testimony establishing that the
documents identified in the complaint were gifted to her by Dr.
King during his lifetime and constituted a valid inter vivos gift.
See Malone v. United States, 326 F. Supp. 106, 116 (N.D. Miss.
1971) ("A valid inter vivos gift, under Mississippi law has the
following elements: a competent donor who, freely intending to
make a gift, delivers it absolutely and irrevocably to a donee
capable of taking the gift, who accepts it.  To consummate an
effective gift, the transaction must be gratuitous and complete,
with nothing left undone.").

In response to the motion, plaintiff insists that Maude
Ballou's testimony does not sufficiently demonstrate a valid inter
vivos gift of any specific documents.  According to plaintiff, in
order to establish his entitlement to summary judgment as to the
documents at issue, defendant must be able to offer evidence to
show, based on the circumstances or conversations between Dr. King
and Maude Ballou, that Dr. King intended that *each specific
document* at issue in this case be a gift to Mrs. Ballou.
Plaintiff points out that Mrs. Ballou testified repeatedly that
she could not recall the specific circumstances under which any

---

[4]    She testified that she, in turn, has given these papers
to her son, the defendant, for him to keep and have as his own.

particular document was given to her by Dr. King.  It submits that
Mrs. Ballou cannot logically claim ownership of something she
cannot specifically recall or identify, and it maintains that her
general statements that Dr. King gave her unspecified documents
during her employment is not sufficient to support the defense
that the actual documents at issue in this case were gifts.  On
the contrary, the Estate argues that Mrs. Ballou's testimony tends
to show that the documents at issue – indeed, all Dr. King's
documents she handled during her employment – were given
to her solely in her capacity as an employee and not as a personal
gift.  In this regard, the Estate points to testimony by Mrs.
Ballou that Dr. King would say to her when he gave her various
documents throughout her employment with him, "Maude, this is for
you. . . .  I am giving you everything to keep for collection."
And she testified during her deposition, he gave her copies of
documents "because he knew I was keeping up with things."  The
Estate reasons that considering the circumstances and the
employment relationship that existed, it is reasonable to infer
that Dr. King was merely giving his secretary documents
relating to his work with the MIA, SCLC or other business, so that
she could file them away.

      Having reviewed Mrs. Ballou's deposition testimony, the court
finds no substantive basis for plaintiff's defendant's challenge
to the sufficiency of her testimony to establish a valid inter

vivos gift of the various documents her family possesses from her
time as Dr. King's employee.  Given the passage of time, Mrs.
Ballou understandably was not able to remember specific details
about how she received any particular document.  When asked about
each specific document listed in the complaint, she responded in
essentially the same manner that it was asking too much of her to
recall details from fifty years ago, and that she could not
possibly be expected to remember the circumstances and
conversations attending each specific document handed to her more
than fifty years ago.  However, while Mrs. Ballou was unable to
recall the specific circumstances in which Dr. King gave her
specific documents and had only a general awareness of the nature
of the numerous and various documents she received from him
through her years as his employee, Mrs. Ballou was reasonably
clear and consistent, and definitely adamant in her testimony that
all of the various documents from the time of her employment with
Dr. King which have been in the possession, actual or
constructive, of her family for the past fifty plus years were
given to her by Dr. King to keep and maintain, not as a duty of
her employment, but as a gift to her personally.

     Mrs. Ballou related that she was Dr. King's loyal employee,
and was also his friend, even before she became he secretary.  In
fact, according to Mrs. Ballou, Dr. King approached her to try to
get her come to work for him, presumably in part because of this
friendship and his confidence in her.  Mrs. Ballou testified that

over the years, she and her husband were very good friends with Dr. King and his wife Coretta.  She stated that she and Dr. King were "very, very close" and worked very closely together. Moreover, it was clear from her testimony that Mrs. Ballou understood the importance of Dr. King's work and wanted to keep a personal record of the events, and Dr. King, aware of her interest, made sure she had copies of the work for herself.

Mrs. Ballou insisted throughout her deposition that the documents which her husband organized and boxed up and stored at ECSU, were given to her by Dr. King to keep, and that he would tell her as he was giving her the documents, "This is for you," or "This is yours."  She agreed it was her job as his secretary to keep up with documents in the office; but she also stated that Dr. King "made sure that I kept copies for myself personally."[5] Responding to the suggestion that his intention was merely to have her maintain the documents as part of her employment duties, Mrs. Ballou testified:

> I know he gave them to me.  He said, "Maude, this is for you and you remember to keep them because you have worked so hard with me trying to get integration for our people."  He said, "Everything you've done has been a big help for me and our people and this is for you to keep, and when I'm gone, remember that I gave these to you."
> ...

---

[5]     Under Federal Rule of Evidence 803(3), a statement that would otherwise be inadmissible hearsay is admissible if it reveals "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)."

> "I'm giving you copies of everything that I do," as he
> said, "because you are – have been such a hardworking
> person."

Mrs. Ballou could not recall whether she was also given originals

of some documents, but she made clear in her testimony that the

documents she personally kept were those that Dr. King gave to her

personally, to keep.  She concluded:

> All I know is all the materials I had kept from my days
> with Martin Luther King, Jr., that he gave me, my
> materials, they are mine, gave them to me, and they are
> still mine, that I – and they're not in my possession,
> but they belong to me and I gave them to my children, my
> son, and that's where they're going to stay.

Plaintiff has offered no proof to contradict or undermine Mrs.

Ballou's testimony, which is the only evidence that exists on the

dispositive issue.  The court, therefore, concludes that on the

merits, as well as on the limitations bar, defendant is entitled

to summary judgment.

Accordingly, it is ordered that defendant's motion for

summary judgment is granted.

A separate judgment will be entered in accordance with Rule

58 of the Federal Rules of Civil Procedure.

SO ORDERED this 23rd day of March, 2012.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE


16